IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | Case No. 1:10mj453 |
| | ) | |
| Jose Espinosa, | ) | |
| | ) | |
| Defendant. | ) | |
| United States of America | ) | |
| | ) | |
| v. | ) | Case No. 1:10mj455 |
| | ) | |
| Donovan Crank, | ) | |
| | ) | |
| Defendant. | ) | |
| United States of America | ) | |
| | ) | |
| v. | ) | Case No. 1:10mj457 |
| | ) | |
| Matthew A. Gipson, | ) | |
| | ) | |
| Defendant. | ) | |
| United States of America | ) | |
| | ) | |
| v. | ) | Case No. 1:10mj480 |
| | ) | |
| Belvin D. Ware, | ) | |
| | ) | |
| Defendant. | ) | |
| United States of America | ) | |
| | ) | |
| v. | ) | Case No. 1:10mj645 |
| | ) | |
| Patrick M. Bates, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

These cases are before the court on defendants' motions to dismiss. Motions to dismiss were previously granted in the *Espinosa* and *Crank* cases after an evidentiary hearing, and the Government moved for reconsideration. In response, the court vacated those dismissals and conducted an additional evidentiary hearing. Defendants Gipson, Ware, and Bates were also before the court at that time and had also filed motions to dismiss. The court took evidence respecting all five defendants at the second evidentiary hearing, and then obtained additional briefing. The court now grants the motions to dismiss in each of these five cases.

At issue is whether the United States government may prosecute these military servicemembers in a civilian court for crimes committed on a military installation after they have waived their right to trial by court-martial and instead received "non-judicial punishment" pursuant to Article 15 of the Uniform Code of Military Justice, 10 U.S.C. § 815 ("Article 15"). While defendants argue several grounds for dismissal, the court grants the motions on the ground that defendants did not make voluntary, knowing, and intelligent waivers of their statutory right to trial by court-martial.

**I.**

**A.**

Article 15 permits a commanding officer to impose disciplinary, or "non-judicial," punishment upon a servicemember under the officer's command for "minor offenses" if the servicemember waives his statutory right to a court-martial. 10 U.S.C. § 815(b). The Manual for Courts-Martial, promulgated by the President pursuant to the authority granted by 10 U.S.C. § 836, defines a "minor offense" as "[o]rdinarily . . . an offense which the maximum sentence imposable would not include a dishonorable discharge or confinement for longer than 1 year if

tried by general court-martial." 2008 MCM Part V ¶ 1e. The parties here agree that the offenses at issue are "minor offenses."[1]

Under Article 15, a servicemember has the right to demand trial by court-martial instead of accepting disciplinary punishment. 10 U.S.C. § 815(a). If the servicemember has elected to receive disciplinary punishment rather than a trial by court-martial for the minor offense, the military may not prosecute the servicemember by court-martial. 2008 MCM Rule 907(b)(2)(D)(iv). This either-or condition of disciplinary punishment or trial by court-martial gives rise to the term "non-judicial punishment" to describe the former.

Congress made the last major changes to Article 15 in 1962, when it increased the authority of commanding officers to impose non-judicial punishment. The Senate Report accompanying the bill making those changes stated that the purpose of the bill was to "enable [commanding officers] to deal with minor disciplinary problems and offenses without resort to trial by court-martial." S. REP. NO. 87-1911, at 1-2, *reprinted in* 1962 U.S.C.C.A.N. 2379, 2380. The report went into further detail:

> The bill, by providing increased authority for nonjudicial punishment, will enable commanders to deal promptly and efficiently with problems of discipline. At the same time, the increased nonjudicial authority should permit the services to reduce substantially the number of court-martials [sic] for minor offenses, which result in stigmatizing and impairing the efficiency and morale of the person concerned.

S. REP. NO. 87-1911, at 1-3, *reprinted in* 1962 U.S.C.C.A.N. 2379, 2381-82. Thus, the objective of Article 15 is, in short, to increase the use of non-judicial punishment and, correspondingly, to reduce the number of courts-martial for minor offenses.

---

[1] Under some circumstances not relevant here, the servicemember has no right to demand a court-martial, *e.g.*, when a "minor offense" occurs at sea. *See* 10 U.S.C. § 815(a). Under other circumstances not relevant here, it can be imposed for offenses that are not "minor."

The Manual of the Judge Advocate General (the "JAG Manual") is promulgated pursuant to the Manual for Courts-Martial and governs the conduct of military prosecutions in the Department of the Navy, including the United States Marine Corps. JAG Manual § 101a, Prefatory Note 3. It states that non-judicial punishment "is designed for minor misconduct in a nonjudicial forum, without the permanent stigma of a record of 'Federal conviction.'" JAG Manual § 0110b. The JAG Manual also flatly prohibits the imposition of non-judicial punishment for "minor offense" conduct for which servicemembers have already been tried in United States District Courts. JAG Manual § 0124d. The clear intention of this provision is to prevent punishing servicemembers twice for the same conduct.

**B.**

The penalties available at non-judicial punishment are delineated at 10 U.S.C. § 815(b). As the cases before the court demonstrate, those penalties include reduction in rank, forfeiture of pay, movement restrictions, and extra duties.

Under a separate set of regulations, the military may pursue administrative separation of a servicemember based upon civilian offenses such as those at issue here. The Naval Military Personnel Manual, issued pursuant to Navy Regulations and which applies to defendants, provides that a servicemember may be separated by reason of misconduct based upon commission or conviction of a civilian offense. Naval Military Pers. Manual 1910-142, -144.

**C.**

It is also important to note that if a servicemember faced with the choice between non-judicial punishment and trial by court-martial demands and receives a trial by court-martial, the government may not then prosecute the servicemember in civilian court, pursuant to principles of double jeopardy. *See Wilkes v. Dinsman*, 48 U.S. (7 How.) 89, 123, 12 L.Ed. 618 (1849)

(proceedings before a court-martial are "a bar to subsequent indictments in courts of common law for the same offense") (internal citations omitted); *see also Kepner v. United States*, 195 U.S. 100, 128, 24 S.Ct. 797, 49 L.Ed. 114 (1904) ("[A] person has been in jeopardy when he is regularly charged with a crime before a tribunal properly organized and competent to try him . . . .") (citing *Coleman v. Tenn.*, 97 U.S. (7 Otto) 509, 24 L.Ed. 1118 (1878)).[2] It has been held in this district, though, that the Double Jeopardy Clause does not bar criminal prosecution after non-judicial punishment. *United States v. Trogden*, 476 F.Supp. 2d 564, 571 (E.D. Va. 2007).

## II.

Defendants in these cases are members of the United States Marine Corps who allegedly operated motor vehicles while under the influence of alcohol within the boundaries of the Marine Corps Base at Quantico, Virginia. Defendants were therefore subject to, and had the right to, be tried by court-martial.

Pursuant to the procedures authorized under Article 15, defendants were taken before a superior officer and offered non-judicial punishment instead of a court-martial. Defendants were also advised of their right to seek counsel. Defendants Espinosa, Gipson, and Ware attempted to

---

[2] It does not appear that any court has ruled on the question whether the Double Jeopardy Clause precludes civilian prosecution after proceedings by a "summary" court-martial, as distinguished from a "special" or a "general" court-martial. In light of the holding of *Middendorf v. Henry*, 425 U.S. 25, 96 S. Ct. 1281, 47 L. Ed. 2d 556 (1976) that there is no right to counsel under either the Fifth or Sixth Amendment in a summary court-martial because such a proceeding is not a criminal prosecution, 425 U.S. at 42, 48, the Supreme Court might find that jeopardy does not attach when a servicemember who has declined non-judicial punishment is subject to summary court-martial proceedings. However, a servicemember can object to a trial by summary court-martial, and insist on being tried by special or general court-martial instead. *See* 10 U.S. § 820; *see also Middendorf*, 425 U.S. at 32-33, 46-47. Therefore, regardless of the applicability of double jeopardy principles to summary court-martial, a servicemember who exercises his right to trial by court-martial can preclude subsequent civilian prosecution. (This of course presupposes a servicemember who fully understands his or her rights and options.) For discussion on the differences between summary court-martial and special and general courts-martial, *see Middendorf*, 425 U.S. at 31-33.

exercise that right by speaking with a JAG officer provided to servicemembers for consultations on base.³ Defendants Crank and Bates did not speak with a military attorney.⁴ All five defendants waived their right to demand trial by court-martial and received non-judicial punishment in exchange for their waiver.⁵ Defendants' agreements were memorialized in writing in Unit Punishment Book entries, which are pre-printed forms on which the details of defendants' offenses were entered and defendants indicated their decisions to accept non-judicial punishment in exchange for waiving their right to a court-martial.

---

³ There is some suggestion in the record that defendant Ware had retained private, civilian counsel, but the only evidence for that proposition is a vague, hearsay recollection of defendant Ware's First Sergeant. Transcript of January 12, 2011 Evidentiary Hearing at 17 ll.12-14; 28 ll.11-12. That is an insufficient basis for the court to conclude that defendant Ware had such counsel and/or consulted with him/her about his drunk driving offense.

⁴ Defendant Crank has previously accepted non-judicial punishment and subsequently been prosecuted in this court under circumstances similar to his current case. He spoke with a JAG officer on base prior to accepting non-judicial punishment in the earlier case.

⁵ Defendant Espinosa received a reduction in rank from Private First Class to Private, forfeited $1,622.00 in pay (suspended for six months), was restricted to base (as well as to certain movements within base) for 45 days, and was given two hours of extra duties per day for 45 days.
    Defendant Gipson received a reduction in rank to pay grade E-2, forfeited $1,622.00 in pay (suspended for six months), was restricted to base (as well as to certain movements within base) for 45 days, and was given extra duties for 45 days.
    Defendant Ware forfeited $3,336.00 in pay ($1,668.00 of which was suspended for six months) and was given 45 days of extra professional duties. He was also placed on promotion-restricted status for two years.
    Defendant Crank received a reduction in rank from Lance Corporal to Private First Class, forfeited $1,622.00 in pay, was restricted to base (as well as to certain movements within base) for 45 days, and was given extra duties for 45 days. In addition to his non-judicial punishment, defendant Crank was administratively separated from the Marine Corps for misconduct based on commission of a serious offense.
    Defendant Bates received a reduction in rank to pay grade E-3, forfeited $1,922.00 in pay ($961.00 of which was suspended for six months), restricted movement, and 45 days of extra professional duties; and restricted movement. He was also placed on promotion-restricted status for one year.

Thereafter, the government, through a Special Assistant United States Attorney who is also a United States Marine Corps Captain, filed the pending criminal informations in this court against defendants.[6]

### III.

### A.

When a servicemember is faced with the decision whether to waive his right to trial by court-martial and instead accept non-judicial punishment, his waiver must be voluntary, knowing, and intelligent. *Fairchild v. Lehman*, 814 F.2d 1555, 1558-59 (Fed. Cir. 1987) (internal citations omitted), *aff'g* 609 F. Supp. 287 (E.D. Va. 1985) (Williams, J.). To comply with that standard, the servicemember must have "sufficient awareness of the relevant circumstances and likely consequences[]" of his decision. *Id.* (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)) (internal quotation marks omitted). In these cases, it is clear that defendants did not possess "the requisite quantum of information necessary for an informed decision[.]" *Id.* (quoting *United States v. Booker*, 5 M.J. 238, 243 (C.M.A. 1977)).

---

[6] The Manual for Courts-Martial incorporates a 1985 Memorandum of Understanding between the Department of Justice and the Department of Defense (the "MOU"). *See* 2008 MCM Appx. 3. The MOU is intended to establish the working relationship and division of labor between the two departments as to the investigation and prosecution of crimes over which both departments have jurisdiction. 2008 MCM Appx. 3 ¶ A. The MOU states that the Department of Defense will investigate, and the military department concerned will prosecute by court-martial, crimes committed on military installations by individuals subject to the Uniform Code of Military Justice. 2008 MCM Appx. 3 ¶ C.2.a. The Department of Defense is not expected even to give notice to the Department of Justice unless the case is "significant" and the subject or victim is neither a servicemember nor a dependent of a servicemember. *Id.* Thus, the MOU contemplates that cases such as these will be handled entirely through military channels, without the involvement of the Department of Justice. The government therefore appears to violate its own established policies by prosecuting these defendants in civilian court.

## B.

There is little discussion in the precedents of what does and does not constitute "the requisite quantum of information necessary for an informed decision," but *Booker* and *Fairchild* provide adequate guidance in the present cases.

*Booker* stands for the simple but important proposition that a servicemember is entitled to the assistance of counsel in deciding whether to demand trial by court-martial or waive his right to trial and accept non-judicial punishment. 5 M.J. at 243.[7] Finding that "[t]he consequences of a decision to accept . . . an Article 15 . . . involve due process considerations[,]" the court held that "only a legally trained person can supply the requisite quantum of information necessary for an informed decision[.]" *Id.* The court thus also required that an individual facing the decision whether to accept non-judicial punishment be informed of his right to consult with independent counsel. *Id.*

In *Fairchild*, a Marine servicemember was charged with use of marijuana while on active duty and presented with the choice between trial by court-martial or waiving trial and accepting non-judicial punishment. 814 F.2d at 1556. The servicemember met with a military lawyer (who later did not recall the meeting) and subsequently accepted non-judicial punishment. *Id.*

After the imposition of non-judicial punishment, the servicemember was informed that his commanding officer intended to recommend an other-than-honorable discharge based on the non-judicial punishment. 814 F.2d at 1556. After receiving exhibits and testimony, the Administrative Discharge Board recommended an other-than-honorable discharge, and the servicemember's commanding general accepted the recommendation. *Id.* at 1557. The

---

[7] *Booker* also holds that a servicemember is entitled to the assistance of counsel in deciding whether to object to summary court-martial proceedings and instead demand trial by special or general court-martial. *See* 5 M.J. at 243.

servicemember applied to the Board of Corrections of Navy Records (the "BCNR") to alter his military records, but his application was denied. *Id.*

The servicemember then appealed to this court, where Judge Williams held that the BCNR had erred in upholding the non-judicial punishment. 814 F.2d at 1557. The court concluded that the BCNR's finding that the servicemember had been fully informed of the consequences of accepting non-judicial punishment was unsupported by substantial evidence. *Id.* at 1558. In doing so, it looked to the affidavit of the servicemember, in which he stated that his military attorney had told him that if he accepted non-judicial punishment, he could not receive an adverse discharge. *Id.* In contrast, the BCNR had relied upon the unsworn statement of the servicemember's military attorney, in which the attorney could not recall the advice he gave and provided only an opinion as to what he thought he would have said. *Id.*

The Federal Circuit upheld the district court's decision, holding that the district court was correct in finding that the BCNR's conclusion that the servicemember was properly informed of the consequences of accepting non-judicial punishment was not supported by substantial evidence. 814 F.2d at 1559-60. The court found that although the servicemember had received assistance of counsel, as required by *Booker*, the military attorney had misinformed him of the consequences of accepting non-judicial punishment by stating that he could not receive an adverse discharge if he accepted non-judicial punishment. *Id.* at 1560. In light of that fact, the Federal Circuit held that the servicemember's waiver of his statutory right to trial by court-martial was not intelligent and therefore was invalid. *Id.*

The Federal Circuit upheld the district court's decision to vacate the non-judicial punishment, and further found that the decision to vacate the Administrative Discharge Board proceeding was not clearly erroneous because that proceeding had been based on the non-judicial

punishment. 814 F.2d at 1560. Having determined that the servicemember had waived a statutory right in electing to accept non-judicial punishment, the court confined its reasoning to the statutory violation, and did not find it necessary to reach any constitutional issues. *Id.* at 1559.

Thus, *Fairchild* holds that when a servicemember has been misinformed as to the consequences of waiving his statutory right to trial by court-martial and accepting non-judicial punishment, his waiver is invalid. This is true even when the consequence as to which he was misinformed is not technically part of the non-judicial process, as the consequence in issue in *Fairchild* was an administrative separation premised on the non-judicial punishment.

## C.

*Fairchild* held that an accused servicemember "can[not] execute an intelligent waiver of his statutory right to trial when he has been misinformed of the consequences of electing nonjudicial punishment by counsel provided by the military." 814 F.2d at 1560. The same must be true when, as discussed below, the military simply has not informed him of all of the consequences.

Line 2 of the Unit Punishment Book entries that defendants signed to indicate their waiver of their right to trial by court-martial and acceptance of non-judicial punishment, states that the servicemember has been given an opportunity to consult with a military lawyer at no cost. Line 4 of the Unit Punishment Book entries states that the servicemember has been given the opportunity to consult with a lawyer provided at no cost.[8] However, the evidence before the court establishes that the attorney consultation provided to the accused servicemembers was

---

[8] Line 4 is labeled "*Booker* Statement" in reference to *United States v. Booker, supra*.

seriously inadequate to permit them to make voluntary, knowing, and intelligent waivers of their right to trial by court-martial where that waiver would result in civilian prosecution.

The court heard testimony from Captain Katherine Doyle Feingold and Major Yong J. Lee, who are or were JAG officers posted to Marine Corps Base Quantico and who were responsible for counseling servicemembers facing the choice between court-martial and non-judicial punishment. The testimony of Captain Doyle Feingold and Major Lee shows that the military lawyers provided to accused servicemembers, in adherence to JAG Manual procedures, make every effort to avoid the creation of an attorney-client relationship.[9] Their advice is limited to the technical aspects of a court-martial and non-judicial punishment.[10] They do not discuss the particular facts of a servicemember's case.[11] The attorneys discuss the maximum penalties available at a court-martial and through non-judicial punishment,[12] but do not discuss civilian prosecution beyond the double jeopardy implications of opting for a court-martial or the need for the servicemember to appear at his civilian court date.[13] The military attorneys do not discuss the penalties available in civilian court; in fact, both Captain Doyle Feingold and Major Lee testified that they do not even know what the penalties available in civilian court are.[14] Moreover, they do

---

[9] Transcript of January 12, 2011 Evidentiary Hearing at 106 ll.14-18; 111 ll.14-20; 127 ll.2-6; 140 ll.11-13; 158 l.24-159 l.2; 162 ll.3-9; 168 ll.18-21.

[10] Tr. at 111 l.23-112 l.1; 126 l.21-127 l.21; 162 ll.10-12; 169 l.22-171 l.1.

[11] Tr. at 112 ll.1-5; 127 ll.4-6; 136 ll.2-6; 140 ll.2-11.

[12] Tr. at 107 ll.14-19; 112 ll.15-20; 129 ll.22-23; 131 l.25-133 l.16; 169 l.25-170 l.2.

[13] Tr. at 106 l.19-107 l.5; 109 ll.2-6; 112 l.25-113 l.7; 128 ll.19-23; 135 l.22-136 l.1; 165 ll.11-19; 166 ll.7-13; 167 ll.3-7; 171 ll.11-20.

[14] Tr. at 128 ll.2-4; 133 ll.6-10; 134 ll.12-14; 134 l.25-135 l.13; 162 l.25-163 l.11.

not discuss what further administrative action the military might take based upon the civilian case and/or its disposition.[15]

Captain Doyle Feingold did testify that accused servicemembers are advised that they can seek civilian counsel to help them understand what might happen in civilian court.[16] However, her testimony indicates that civilian prosecution is treated as a completely separate matter, rather than as part of what it is: the overall, integrated, and interdependent circumstances relevant to the servicemember's decision.[17] Indeed, Captain Doyle Feingold seemed to treat civilian prosecution as a *fait accompli*, suggesting that accused servicemembers would need to "contact the attorney that was provided to them at this courthouse" regarding the possible penalties here.[18] The provision of an attorney in this courthouse of course presupposes that charges have been brought here, which will not occur until after the servicemember has made a decision regarding non-judicial punishment. Major Lee further testified that "[f]ederal court is a separate animal altogether" and that his office "defer[s] to the federal defenders" on questions regarding federal civilian prosecution.[19] The testimony of Captain Doyle Feingold and Major Lee is consistent with the other evidence in this case tending to show that when a servicemember is charged with drunk driving on a military installation, emphasis is placed solely on the military consequences

---

[15] Defendant Espinosa testified that his superior officers have now informed him that the outcome of this case could result in further non-judicial punishment or other adverse action, including an other-than-honorable discharge or withholding promotion. Tr. at 148 l.9-149 l.12.

[16] Tr. at 128 ll.5-8; 129 ll.1-3.

[17] Those circumstances include the fact, conceded by the government at oral argument, that the military authorities at Quantico have a policy of pursuing essentially all such cases in this court after non-judicial punishment.

[18] Tr. at 128 ll.5-8.

[19] Tr. at 169 ll.16-19.

of those charges, while what happens "out in town," *i.e.*, in this court, is addressed only to the extent that servicemembers are told they must appear in civilian court.

*Fairchild* dictates that more is required for a servicemember to make a fully-informed decision to waive his right to trial by court-martial. If he will be prosecuted in a civilian court as a result of accepting non-judicial punishment, he must know more than just the maximum punishments available at non-judicial punishment and court-martial; he must also know the penalties to which he will be subject in this court, as well as any further action the military might take based on his case here. This accords with *Fairchild*'s requirement that a servicemember must be aware of the possibility and nature of administrative action the military might take based on his non-judicial punishment.

When a servicemember is not made aware of (1) the potential penalties in this court for a conviction on drunk driving charges; (2) that his conviction—or even his charge—in this courthouse could result in his separation from the military despite his attempt to avoid it by accepting non-judicial punishment; or (3) the likelihood of those outcomes, he cannot make a voluntary, knowing, and intelligent waiver of his right to trial by court-martial if that waiver could result in civilian prosecution. An accused servicemember must be aware of *all* of the likely consequences—both military and civilian, as well as the interplay between them[20]—of his decision whether to demand trial by court-martial or to waive that right, accept non-judicial punishment, and be subject to prosecution in this court.

The court believes, as the *Booker* court did, that only an attorney can provide that "requisite quantum of information necessary for an informed decision," and that the counsel must

---

[20] Captain Doyle-Feingold's testimony indicates that she did address the "interplay" of civilian prosecution, non-judicial punishment, and court-martial when counseling servicemembers, but only to the extent of double jeopardy implications. Tr. at 111-114, 128.

be "independent." 5 M.J. at 243. As *Fairchild* demonstrates, however, the right to confer with independent counsel prior to acceptance of non-judicial punishment recognized in *Booker* is meaningless if that counsel is deficient. Assuming that the conversations between accused servicemembers and the JAG officers provided to them qualify as "counsel," the evidence before the court establishes that the counsel provided to these defendants was not independent. The JAG lawyers were instructed to avoid discussion of the servicemembers' individual circumstances and thereby avoided giving advice tailored to a servicemember's situation. A further consequence of those procedures is that, by design, the counseling provided is deficient because it does not afford accused servicemembers the information, detailed above, that is necessary to validate a waiver that results in prosecution in this court.[21]

## IV.

The evidence before the court shows that these defendants, like other servicemembers accused of committing a "minor offense" on Marine Corps Base Quantico were told (1) that they may demand trial by court martial or opt instead to accept non-judicial punishment; (2) that they could consult with an attorney provided by the military before making their decision; (3) (if they consulted with counsel) the maximum penalties that are available at court-martial and non-judicial punishment; and (4) that they must appear in federal civilian court to face charges there. They were not told (1) the maximum penalties available in this court; (2) the administrative action the military might take based upon their civilian criminal charges; or (3) the likely

---

[21] Whether the servicemember must first be allowed to form an attorney-client relationship need not be decided to resolve the present cases. Nor need the court deal today with the obvious due process implications of the government conduct in issue. Because *Fairchild* controls and provides defendants a remedy based on statutory rights, the court avoids the constitutional issue, while noting that the interplay here between civilian and military penalties raises issues not presented in *Fairchild* to the Federal Circuit.

ramifications of their decision whether to accept non-judicial punishment or demand trial by court-martial. That information is crucial to the ability to make an intelligent decision to waive the right to trial by court-martial.

The evidence before the court shows that defendants Espinosa, Gipson, and Ware consulted with a military attorney and received advice that was inadequate to apprise them fully of the consequences of their decisions to waive their right to trial by court-martial and accept non-judicial punishment. Accordingly, their waivers were ineffective, and their prosecutions in this court, which are premised on their waivers, cannot stand.[22]

The evidence before the court shows that defendants Crank and Bates waived their right to consult with the counsel provided by the military prior to making their decisions. Had they exercised that right, however, they would have received the same inadequate counseling as the other defendants. It is therefore impossible to determine whether defendants Crank and Bates waived their right to counsel based on futility or other factors,[23] and their waivers of counsel cannot be characterized as knowing and intelligent.[24] Moreover, there is nothing in the record

---

[22] In contrast to the servicemember in *Fairchild*, no defendant here has challenged his non-judicial punishment. Thus, although the court finds that defendants' waiver of their right to trial by court-martial was invalid, the court's decision acts only to vacate the present prosecutions.

[23] Indeed, as defendant Crank's First Sergeant testified, defendant Crank stated that the attorneys provided by the military "[were not] going to tell him anything he didn't know already." Tr. at 41 l.25-42 l.1. In light of the fact that defendant Crank had consulted with military counsel before a previous acceptance of non-judicial punishment, *see supra* n.4, that statement further reveals the insufficient, *pro forma* nature of the counseling provided to accused servicemembers and indicates defendant Crank's determination that consulting with counsel would not be helpful because of the limited, technical nature of that advice.

[24] It has been held that forms such as the Unit Punishment Book entries that advise the accused of his right to consult with independent counsel are sufficient to establish a valid waiver of the right to counsel and, consequently, of the admissibility of a record of non-judicial punishment. *See United States v. Doran*, 9 M.J. 385, 386 (C.M.A. 1980), overruling 7 M.J. 1015, 1017-18 (N.C.M.R. 1979). *Doran*, however, did not address the adequacy of the

that shows they were sufficiently aware of all of the relevant information needed to make a voluntary, knowing, and intelligent waiver of their right to trial by court martial.[25]  Their waivers of trial by court-martial are accordingly invalid, and their prosecutions cannot stand, either.[26]

V.

Finally, the government makes two arguments that have not yet been addressed.  First, the government argues that civilian prosecution of cases like these is important to vindicate public safety, as a conviction ensures that drunk drivers receive notations on their driving records and that the Department of Motor Vehicles takes appropriate action.  The simple answer is that the government could elect to prosecute all such cases by court-martial, reporting guilty adjudications to the state agency as does this court; or the government could remove drunk driving offenses from the scope of Article 15, by MOU or otherwise, and prosecute them all in civilian court.  In any event, the government's stated concern does not address the adequacy of the procedures followed here.

Second, the government argues that these cases are resolved under *United States v. Trogden*, *supra*.  In *Trogden*, however, the court expressly considered only whether the Double Jeopardy Clause barred criminal prosecution after non-judicial punishment, and neither the *pro se* defendant nor the government raised any other issue.  *See* 476 F.Supp. 2d at 566.  The issue

---

consultation to be provided.  *Doran* also arose in a purely military context, and therefore did not present the implications of civilian prosecution that are present here.

[25] Given that the likely consequences will vary depending on the specific facts of each case, including *inter alia* an accused servicemember's prior history of violations of the law, the court gives no credence to the government's contention that defendant Crank, who had previously accepted non-judicial punishment and civilian prosecution, was fully aware of the consequences of his decision.  Moreover, it is overwhelmingly likely that the advice given to defendant Crank on that prior occasion was deficient for the same reasons detailed in this opinion.

[26] *See supra* n.22.

here is whether defendants made a valid waiver of their right to trial by court-martial. *Trogden* is therefore inapplicable.

### VII.

For the foregoing reasons, an order will be entered in each of these cases granting the motions to dismiss.

/s/
Thomas Rawles Jones, Jr.
United States Magistrate Judge

Alexandria, Virginia
April 25, 2011